UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

BSN

UNITED STATES AVIATION
UNDERWRITERS, INC.,
a New York corporation,
as managers and on behalf
of the United States
Aircraft Insurance
Group,

CASE NO.: 8:03-CV-1823-T-26TBM

        Plaintiff,

vs.

BAYFRONT MEDICAL CENTER, INC.,
A Florida corporation,

        Defendant.

_____/

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, UNITED STATES AVIATION UNDERWRITERS, INC. (hereinafter "USAU"), as managers and on behalf of the United States Aircraft Insurance Group (hereinafter "USAIG"), by and through its counsel undersigned and pursuant to 28 U.S.C., Section 2201, hereby files its complaint for declaratory relief and other relief and states:

### GENERAL ALLEGATIONS:

**A. Jurisdiction and Parties:**

1. Counts I and II of this Complaint seek declaratory relief, pursuant to 28 U.S.C., Section 2201. This Court has jurisdiction of the remaining counts pursuant to 28 U.S.C., Section 1332.

2. Plaintiff United States Aviation Underwriters, Inc. (hereinafter referred to as "USAU") is a New York corporation, with its principal place of business in New York, New York. USAU, at all times material hereto, was the manager and designated agent of the several insuring members of the United States Aircraft Insurance Group ("USAIG"), that issues aviation and aerospace insurance policies. None of the member companies of USAIG is incorporated in Florida, or has its principal place of business in Florida. In

1

this complaint, USAU and USAIG shall collectively be referred to as "USAIG."

3. Defendant Bayfront Medical Center, Inc. (hereinafter "BAYFRONT") is a Florida corporation with its principal place of business in St. Petersburg, Pinellas County, Florida.

**B. The Emergency Air Transport Services Agreement:**

4. In May 1997, Bayfront entered into a contract with Rocky Mountain Holdings, LLC, a Delaware company, d/b/a Rocky Mountain Helicopters (hereinafter "RMH") entitled "AGREEMENT FOR EMERGENCY AIR TRANSPORT SERVICES". This contract will be hereinafter referred to as the "Transport Contract", a true and correct copy of which is attached hereto as Exhibit "A".

5. After May 1997, Bayfront and RMH agreed to extend the term of the Transport Contract, and the Transport Contract was still in effect on April 25, 2000.

6. Under the Transport Contract, RMH agreed to provide helicopters, and flight crew to operate those helicopters, which Bayfront could utilize in providing emergency air transport services to Bayfront's patients. Under the Transport Contract, helicopter flight crew and mechanics were to be employees of RMH, while medical personnel riding on the flights were to be employees of Bayfront.

7. In Paragraphs 15, 16, and 17 of the Transport Contract, Bayfront and RMH agreed as follows:

> "15. MINIMUM INSURANCE REQUIREMENTS. RMH shall, during the period of this Agreement maintain the following minimum insurance coverage:
>
> All risk aircraft hull insurance, ground and flight.
>
> Aircraft liability insurance covering injuries to passengers or third parties and damage to property in an amount not less than $50,000,000 (Fifty Million dollars) for any one accident or series of accidents arising out of any one event.
>
> Workmen's compensation insurance covering all RMH employees."

2

> 16. PARTIES TO BE NAMED AS ADDITIONAL INSUREDS. With respect to the coverage maintained by RMH, BMC [Bayfront] shall be named as an additional insured. With respect to the coverage to be maintained by BMC, RMH shall be named as additional insured. In addition, RMH shall be named as an additional insured under the general medical liability policies of BMC. As evidence of the foregoing the parties shall provide each other with certificates of insurance and copies of the applicable insurance policies. The carriers of the respective parties shall not cancel coverage with respect to additional insured [sic] without at least 30 (thirty) days' notice for failure to pay premium or 30 (thirty) days' notice of any other breach of the insurance agreement.
>
> 17. INDEMNIFICATION. RMH agrees to defend, indemnify and hold BMC harmless from all claims, demands and causes of action of every kind and character arising from any act or inaction of RMH, its agents, employees or Subcontractors, in connection with the performance of, or failure to perform, its obligations outlined herein. BMC agrees to defend, indemnify, and hold RMH harmless from and against all claims, demands, and causes of action of every kind and character arising from any act or inaction of BMC its agents, employees or Subcontractors, in connection with the performance by BMC of or failure to perform, its obligations outlined herein. RMH shall be responsible for emergency medical air transport and shall indemnify BMC against all claims arising out of the negligent provisions of such transport. BMC shall be responsible for emergency medical care and shall indemnify RMH against all claims arising out of the negligent provision of such care by the BMC's employees."

8.  In Paragraph 29 of the Transport Agreement, Bayfront and RMH agreed that the Transport Agreement was to be governed by and construed in accordance with the laws of the State of Florida.

**C. The USAIG Insurance Policy:**

9.  Before December 30, 2000, USAIG bound a policy of aircraft insurance numbered SIHL 1-465A to RMH as named insured, with effective dates of December 30, 2000 to December 30, 2002, beginning and ending at 12:01 a.m. local standard time on those dates (which insurance policy will hereinafter be referred to as "the AIRCRAFT POLICY").

10. The AIRCRAFT POLICY, as page A4, states that "throughout this policy the words you and your refer to the person or organization named on the DECLARATIONS PAGE as the Named Insured".

11. The person or organization named on the Declarations Page of the AIRCRAFT POLICY as the Named Insured was RMH. Bayfront was not named on the Declarations Page of the AIRCRAFT POLICY as the Named Insured.

12. The AIRCRAFT POLICY contained an Endorsement, designated A13, which stated:

> "With respect to all E.M.S. operations performed by Rocky Mountain Holdings, LLC, et al. the medical facility having a signed agreement with the Named Insured for transportation services shall be included as follows:
>
> The "Who's Covered" section of "Your Liability Coverage" includes such medical facility, but only for claims resulting from your ownership, maintenance or use of the aircraft, and only to the extent required in the agreement between the Named Insured and the medical facility;"

This endorsement will be referred to in this Complaint as the "Additional Insured Endorsement".

**D. The April 2000 accident:**

13. On April 25, 2000, a medical transport helicopter, while engaged on a flight dispatched pursuant to the Transport Agreement, crashed in St. Petersburg, Florida. At the time of the crash, the helicopter was being operated by Mark Foster Wallace, Sr., as its pilot. For the purposes of this Complaint, this crash will be referred to as "the April 2000 accident".

14. At the time of the April 2000 accident, Mark Foster Wallace, Sr. was an employee of RMH, and was in the course and scope of that employment.

15. As a result of the April 2000 accident, Mark Foster Wallace, Sr. died.

**E. The Ware Action:**

16. Ellen E. Ware, as Personal Representative of the Estate of Mark Foster Wallace, Sr. (hereinafter "WARE") has filed an action in the Circuit Court of the Sixth Judicial Circuit of Florida, in and for Pinellas County, Florida, against Bayfront and others. Said action will be hereinafter referred to as "the Ware Action". A true and correct copy of the Complaint filed in the Ware Action is attached hereto as Exhibit "B".

17. In the Ware Action, WARE has asserted a claim, on behalf of the Estate and survivors of Mark Foster Wallace, Sr., for damages under the Florida Wrongful Death Act against Bayfront, alleging that the April 2000 accident was the result of negligence on the part of Bayfront.

**F. Bayfront's Demands for Defense and Indemnity, and Controversy:**

18. Bayfront has contended to USAIG that the AIRCRAFT POLICY provides liability insurance coverage to Bayfront for some or all of the claims for monetary damage asserted against Bayfront in the Ware Action, and has demanded that USAIG defend and indemnify Bayfront against the Ware Action.

19. Following Bayfront's demand, USAIG agreed to provide Bayfront a defense against the Ware Action, subject to a reservation of rights while it reviewed the matter and determined its coverage position under the AIRCRAFT POLICY. In agreeing to provide a defense, USAIG advised Bayfront of the facts that the AIRCRAFT POLICY may not provide liability insurance coverage to Bayfront for the claims asserted against Bayfront in the Ware action, because:

(a) Under the Transport Agreement, RMH was not obligated to defend or indemnify Bayfront against claims asserted against Bayfront because of Bayfront's own alleged negligence;

(b) Under the Transport Agreement, RMH was not obligated to defend or indemnify Bayfront against claims asserted against Bayfront by RMH's employees;

(c) Under the Transport Agreement, RMH was not obligated to purchase insurance to protect Bayfront against the claims of transport helicopter pilots (as opposed to "passengers and third parties");

(d) The AIRCRAFT POLICY did not provide liability insurance coverage to Bayfront under the Additional Insured Endorsement, because there was no obligation under the Transport Agreement for RMH to purchase insurance to protect Bayfront against, or to indemnify Bayfront against, the claims asserted against Bayfront in the Ware Action.

In reserving its rights to deny insurance coverage for the claims asserted against Bayfront in the Ware Action, USAIG specifically advised Bayfront that USAIG was reserving all rights to seek reimbursement from Bayfront for all attorneys' fees and costs incurred by USAIG in defending Bayfront against the Ware Action.

20. Bayfront, after receiving notification by USAIG of the conditions placed by USAIG on the assumption of Bayfront's defense, acquiesed in the defense provided by USAIG. USAIG continues to defend Bayfront against the Ware Action, while continuing to reserve its rights to deny that the AIRCRAFT POLICY provides coverage to Bayfront for the Ware Action, to withdraw its defense of Bayfront upon determination of that fact, and to seek reimbursement from Bayfront for the attorneys' fees and the costs expended in defending Bayfront.

21. It is USAIG's position that the AIRCRAFT POLICY does not provide liability insurance coverage to Bayfront for the claims asserted against Bayfront in the Ware Action. If this is the case, USAIG would have no obligation under the AIRCRAFT POLICY to defend Bayfront against the Ware Action or to indemnify Bayfront against any claims asserted against Bayfront in the Ware Action. Bayfront has advised USAIG that it does not agree with USAIG's determination.

22. Upon information and belief, the Ware Action seeks recovery of more than

$75,000 in damages from Bayfront. Since there is a controversy between USAIG and Bayfront as to whether the AIRCRAFT POLICY provides liability insurance coverage to Bayfront for the claims asserted in the Ware Action, and since there is a controversy between Bayfront and USAIG as to whether the AIRCRAFT POLICY provides liability insurance coverage to Bayfront for the claims asserted against Bayfront in the Ware Action, this Court has jurisdiction to enter a Declaratory Judgment pursuant to 28 U.S.C. Section 2201.

### COUNT I: DECLARATORY RELIEF
### AS TO INDEMNITY OBLIGATION UNDER TRANSPORT AGREEMENT

23.  USAIG reiterates and realleges Paragraphs 1 through 23, inclusive.

24.  In the Ware action, the Plaintiffs contend that the April 2000 crash was caused, in whole or in part, by the negligence of Bayfront in:

(a) negligently selecting the route of flight;

(b) negligently requiring RMH to conduct the flight through an area unsafe for helicopters due to altitude restrictions and tall obstructions;

(c) negligently failing to provide the pilot of the accident aircraft, Mark Foster Wallace, Sr., with a local obstruction map showing the precise locations of towers and antennas;

(d) negligently failing to adequately monitor and track the accident flight;

(e) negligently failing to adequately train Bayfront employees as to the effective use of available safety equipment;

(f) negligently failing to warn the pilot of the accident flight, Mark Foster Wallace, Sr., of the obstructions within the path of the accident flight;

(g) negligently engaging in non-essential communications with the pilot of the accident flight, Mark Foster Wallace, Sr., thereby distracting him from his task

7

in flying the helicopter in an area with tall obstructions.

25. Bayfront contends that RMH is obligated, under Paragraph 17 of the transport agreement, to indemnify Bayfront against these claims of Bayfront's own negligence. USAIG disagrees with this contention.

26. Bayfront has asserted that, since it contends RMH is obligated under the Transport Agreement to indemnify Bayfront against these claims, then Bayfront should additionally qualify as an Additional Insured under the Additional Insured Endorsement annexed to the AIRCRAFT POLICY.

27. USAIG has advised Bayfront that, contrary to Florida law, the indemnity clause invoked by Bayfront does not clearly and unequivocally state that RMH is to indemnify Bayfront for claims asserted against Bayfront because of Bayfront's own claimed negligence. To the contrary, the indemnity clause requires that Bayfront indemnify *RMH* for such claims of Bayfront's negligence. Therefore, RMH has no obligation under the Transport Agreement to indemnify Bayfront against those claims asserting Bayfront's own alleged negligence in causing the April 2000 crash. Accordingly, Bayfront does not qualify as an Additional Insured under the Additional Insured Endorsement annexed to the AIRCRAFT POLICY.

28. In this action, USAIG invokes this Court's jurisdiction to declare the rights and legal relations of the parties to the AIRCRAFT POLICY, and the rights, if any, of Bayfront under the AIRCRAFT POLICY on the following questions:

 (A) Whether RMH is obligated to indemnify Bayfront under the Transport Agreement against the claims asserted against Bayfront in the Ware Action, for Bayfront's own alleged negligence;

 (B) Whether the AIRCRAFT POLICY provides liability insurance coverage to Bayfront as an Additional Insured for the claims asserted against Bayfront in the Ware Action;

8

(C) Whether USAIG is obligated under the AIRCRAFT POLICY to defend Bayfront against the Ware Action;

(D) Whether USAIG is obligated to indemnify Bayfront to any extent against any claims asserted against Bayfront in the Ware Action.

29. USAIG, pursuant to 28 U.S.C., Section 2202, also requests such other relief as maybe necessary or proper after the rights of the parties have been adjudicated.

30. USAIG requests an award of the costs associated with this action.

## COUNT II:

## UNJUST ENRICHMENT

31. USAIG reiterates and realleges Paragraphs 1 through 23, inclusive.

32. Bayfront has tendered the entire defense of the Ware Action to USAIG, and has demanded that USAIG bear the entire cost of defending that action.

33. As described in Counts I above, the AIRCRAFT POLICY does not provide liability insurance coverage to Bayfront for the claims asserted against Bayfront in the Ware Action, and, therefore, USAIG is not legally obligated to defend Bayfront against that action.

34. Bayfront's demand that USAIG bear all costs of defending the Ware Action has resulted in Bayfront's obtaining of substantial benefits, including the payment of all defense costs to date as well as avoidance of the liabilities and ongoing cost and expense of defending the Ware Action, with respect to which it would be unfair for Bayfront to retain those benefits.

35. As a direct and proximate result of Bayfront's improper tender of the defense of the Ware Action, and as a result of Bayfront's improper demand that USAIG provide insurance coverage for all claims asserted against Bayfront in the Ware Action, Bayfront has been unjustly enriched, and USAIG has sustained, and will continue to sustain, substantial damages, in excess of $75,000, as will be established by the evidence

at trial.

36. USAIG seeks the award of damages and other relief to reimburse it for all defense costs paid to date and for all defense costs to be incurred in the future.

**WHEREFORE,** Plaintiff USAIG demands judgment in its favor and against Bayfront for money damages, plus prejudgment interest where applicable, and costs of this suit.

DATED this 26th day of August, 2003.

F. Bradley Hassell, Esquire
Florida Bar No. 260592
Trial Counsel
EUBANK, HASSELL & MOORHEAD
Post Office Box 2229
Daytona Beach, FL  32115-2229
Phone: (386) 238-1357
Fax:   (386) 258-7406
Attorneys for Plaintiff

comp:7/30/03:clk